UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
LIBERTY INSURANCE UNDERWRITERS INC. and :
ARROW RESTORATION, INC.,                :
                    Plaintiffs,         :        09 Civ. 4912 (DLC)
                                        :
          -v-                           :        OPINION & ORDER
                                        :
GREAT AMERICAN INSURANCE COMPANY,       :
                    Defendant.          :
                                        :
----------------------------------------X

Appearances:

For Plaintiffs:
Marshall T. Potashner
Mark P. Monack
Jaffe & Asher LLP
600 Third Avenue, Ninth Floor
New York, NY 10016

For Defendant:
Sherri N. Pavloff
Farber Brocks & Zane, LLP
51 Charles Street, 2nd Floor
Mineola, NY 11501


DENISE COTE, District Judge:

        This insurance coverage dispute arises out of a personal

injury lawsuit pending in the New York Supreme Court, Luis

Garcia v. Plaza 400 Owners Corp. et al., Index Number 107425/06

(N.Y. Sup. Ct.) (the "Underlying Action").  Plaintiff Arrow

Restoration, Inc. ("Arrow"), and its insurer, Liberty Insurance

Underwriters, Inc. ("Liberty," and with Arrow, the

"Plaintiffs"), now move for an order pursuant to Rule 56, Fed.

R. Civ. P., declaring that (1) defendant Great American
Insurance Company ("Great American") owes Arrow a duty to defend
and indemnify for the claims alleged in the Underlying Action;
(2) declaring that Great American's coverage of Arrow is primary
to both the insurance coverage under Liberty's policy and
Arrow's $50,000 self-insured retention; (3) directing Great
American to assume immediately a duty to defend Arrow in the
Underlying Action; and (4) awarding Liberty and Arrow the costs
and disbursements of this action.

Great American insured a subcontractor that was performing
work for Arrow and whose employee was injured on April 4, 2006
during that work.  Arrow asserts coverage under the
subcontractor's insurance policy with Great American as an
additional insured, but failed to provide Great American with
proper notice of the accident or claim against Arrow until over
three years after the accident occurred, and more than two years
after Arrow was sued by the injured employee.

Great American cross-moves pursuant to Rule 56 for an order
dismissing Plaintiffs' claims on the grounds that Arrow had an
independent duty to give timely notice of its request for
additional insured coverage to Great American, but failed to do
so.  For the reasons stated below, Great American's motion is
granted.

BACKGROUND

1.   The Underlying Action

The following facts are undisputed unless otherwise indicated.  On June 15, 2005, Plaza 400 Owners Corporation ("Plaza") entered into a contract with Arrow pursuant to which Arrow was to act as the general contractor for a construction project involving balcony restoration (the "Project") at 401 East 55th Street, New York, New York (the "Premises").  On June 13, 2005, Arrow entered into an agreement with Diamond Waterproofing Corporation ("Diamond") to subcontract certain work for the Project to Diamond.  Arrow also subcontracted the design and erection of a sidewalk scaffold bridge for the Project to Rockledge Scaffold ("Rockledge").

On April 4, 2006, Luis Garcia ("Garcia"), an employee of Diamond, allegedly suffered serious physical injuries when he fell from an unprotected sidewalk bridge at the Premises (the "Garcia Accident").  On June 30, 2006, Garcia commenced the Underlying Action against Plaza and Rockledge seeking monetary damages.  On January 8, 2007, Garcia filed an amended complaint to add Arrow as a defendant in the Underlying Action.  The Underlying Action is ongoing.

2.    The Liberty Policy

At the time of the Garcia Accident, Arrow maintained primary general liability insurance with Liberty in the amount of $1,000,000 per occurrence, with a $2,000,000 per project aggregate and a $10,000,000 policy aggregate, subject to a $50,000 per occurrence self-insured retention ("SIR"), for the period February 28, 2006 to February 28, 2007 (the "Liberty Policy").  The SIR obligated Arrow to pay the first $50,000 associated with any given occurrence regardless of whether that amount was due and owing because of defense costs, indemnity, or both.  Arrow retained GAB Robins ("GAB") to act as a third-party claims administrator on its behalf.

3.    The Great American Policy

At the time of the Garcia Accident, Diamond maintained primary general liability insurance coverage with Great American in the amount of $1,000,000 per occurrence, subject to a $2,000,000 aggregate, for the period November 27, 2005 through November 27, 2006 (the "Great American Policy").  The Great American policy contained an "Additional Insured Endorsement" which conferred additional insured coverage to

> any person or organization for whom you are performing
> operations when you and such person or organization
> have agreed in writing in a contract or agreement that
> such person or organization be added as an additional
> insured on your policy.  Such person or organization

4

is an additional insured only with respect to
liability for "bodily injury", "property damage" or
"personal and advertising injury" caused in whole or
in part, by:

    1.  Your acts or omissions;
    2.  The acts or omissions of those acting on your
       behalf;
    3.  In the performance of your ongoing operations
       for the additional insured.

For purposes of this motion, Great American does not dispute

that Arrow qualifies as an additional insured under the Great

American Policy.

The Great American Policy also contained a provision

requiring timely notice of "occurrences," "claims," or "suits"

(the "Notice Provision").  The Notice Provision provides in

pertinent part:

    2.  Duties In The Event Of Occurrence, Offense, Claim
       or Suit

       a. You must see to it that we are notified as soon
          as practicable of an "occurrence" or an offense
          which may result in a claim.  To the extent
          possible, notice should include:

          (1)  How, when and where the "occurrence" or
              offense took place;
          (2)  The names and addresses of any injured
              persons and witnesses; and
          (3)  The nature and location of any injury or
              damage arising out of the "occurrence" or
              offense.

       b. If a claim is made or "suit" is brought against
          any insured, you must:

          (1)  Immediately record the specifics of the
              claims or "suit" and the date received;
              and

(2)  Notify us as soon as practicable.

You must see to it that we receive written
notice of the claim or "suit" as soon as
practicable.

The Great American Policy defines "you" as follows:

Throughout this policy the words "you" and "your"
refer to the Named Insured shown in the Declarations,
and any other person or organization qualifying as a
Named Insured under this policy.

It is Great American's contention in this lawsuit that its
policy imposed on any additional insured, such as Arrow,
that seeks coverage under the Great American Policy an
independent duty to give notice to Great American "as soon
as practicable."

4.  Arrow's Provision of Notice to Liberty and GAB

Arrow learned of the Garcia Accident on April 4, 2006, the
day it occurred.  Arrow notified GAB, its third-party claims
administrator, of the Garcia Accident on April 10, 2006.
Liberty first received notice of the Garcia Accident from Arrow
on or about June 12, 2006.

By September 12, 2006, GAB was in possession of a copy of a
November 30, 2005 certificate of insurance identifying Great
American as the primary general liability insurer for Diamond
(the "Certificate of Insurance").  Although Alan Schinderman,
Arrow's designated Rule 30(b)(6) witness, could not recall when

Arrow became aware that Diamond maintained insurance with Great
American or when Arrow received the Certificate of Insurance, he
testified that it was Arrow's custom and practice to demand and
obtain certificates of insurance from contractors prior to
allowing contractors to work on any project and had no reason to
believe that Arrow did not receive the Certificate of Insurance
for Diamond.

GAB maintained internal notes regarding the Garcia
Accident.  GAB's notes include an entry for December 14, 2007,
that states in pertinent part:

> We just recently received the contracts of Diamond and
> Rockledge and will officially tender our defense and
> indemnification to Diamond . . . ..  We will hope for a
> pass through to Diamond but are not too optimistic
> they will assume our defense and indemnification at
> this stage of the litigation.

5.   The January 2, 2008 Letter

As previously noted, Garcia sued Arrow on January 8, 2007,
and about ten months later, on October 4, 2007, Arrow sued
Diamond.  In a letter dated January 2, 2008 (the "January 2,
2008 Letter") addressed to Loyd Keither Friedlander Partners,
Ltd. ("LKF Partners"), Diamond's retail insurance broker, Rivkin
Radler LLP ("Rivkin"), Arrow's counsel in the Underlying Action,
wrote the following:

> Please be advised that we represent [Arrow] as a
> defendant in a lawsuit brought by Luis Garcia as a
> result of an April 4, 2006 accident that allegedly

> occurred while Mr. Garcia was working for [Diamond] at
> [the Premises].  It is alleged that he fell from an
> unprotected sidewalk bridge.
>
> On October 24, 2007, we served [Diamond] with a third-
> party summons and complaint, a copy of which is
> enclosed.  Copies of the affidavits of service on
> those third-party defendants are enclosed.
>
> To date, we have not received an answer on behalf of
> those third-party defendants, nor have we been
> contacted by anyone seeking an extension of time to
> answer the third-party complaint.
>
> A copy of the certificate of insurance issued by your
> company is enclosed.
>
> Please immediately forward this letter and the
> attachments to the applicable insurer to prevent a
> default judgment.

Attached to the January 2, 2008 Letter was a copy of a third-party summons and complaint filed by Arrow against Diamond. Notably, the January 2, 2008 Letter did not attach a copy of Garcia's complaint against Arrow.

On January 4, 2008, LKF Partners sent via facsimile a copy of the January 2, 2008 Letter and the third-party summons and complaint to AmWINS Brokerage ("AmWINS"), a wholesale insurance broker.  The coversheet for the January 4, 2008 facsimile stated in pertinent part:

> Attached is a new general liability claim.  The
> summons & complaint is attached.  Please report to the
> carrier and advise our agency of the claim number and
> the adjuster's name and telephone number.

Also attached to the January 4, 2008 facsimile was a "General Liability Notice of Occurrence/Claim" form dated January 4,

2008, and bearing the electronic signature of LKF Partners, as producer. The claim form describes the "Occurrence" as: "3rd party Summons -- Insured's employee injured while working (WC Claim). Injured employee brought suit against Arrow (contractor)." The claim form does not indicate that Arrow was an additional insured under the Great American Policy.

On January 7, 2008, AmWINS sent an e-mail with a twenty-two-page attachment to Great American. Included in the twenty-two-page attachment were copies of: the January 2, 2008 Letter from Rivkin to LKF Partners; Arrow's third-party summons and complaint against Diamond; the January 4, 2008 facsimile coversheet from LKF Partners to AmWINS; and the January 4, 2008 Notice of Occurrence/Claim form. The twenty-two page attachment that was e-mailed to Great American did not include a copy of the January 8, 2007 complaint filed by Garcia against Arrow.

6.  Great American's Disclaimer to Diamond

In a letter dated March 3, 2008, Great American denied coverage to Diamond based on Diamond's failure to provide timely notice of an occurrence as required by the Notice Provision in the Great American Policy. The March 3, 2008 letter was sent to Diamond, as well as other parties, including Arrow's counsel, on or about March 12 (the "March 12, 2008 Disclaimer"). The March 12, 2008 Disclaimer stated that "the first notice and only

information that Great American has received in reference to the
[Garcia Accident] is a letter dated January 4, 2008, from [LKF
Partners] to [AmWINS] advising them of a new general liability
claim."  The March 12, 2008 Disclaimer explained that Great
American's attempts to contact Diamond by telephone and in
person had been unsuccessful, and that Great American had
learned from Diamond's insurance broker that Diamond had gone
out of business sometime in May 2006.  The letter also stated
that "Great American was able to confirm on March 3, 2008, that
[Diamond] was aware that [Garcia] was injured on April 4, 2006,
because they [Diamond] filed a workers' compensation claim on
April 20, 2006, on his behalf."

     After Great American sent the March 12, 2008 Disclaimer,
Liberty made a note in its internal records concerning the
Garcia Accident.  The entry is dated March 25, 2008 and reads as
follows:

> I received the attached e-mail from defense counsel
> advising that [Diamond's] insurance carrier, Great
> American, has denied its insured's tender due to late
> notice.  I telephoned and spoke with Walter Flamme [at
> GAB] today and requested he speak with defense counsel
> for his recommendations on how to proceed.  Mr. Flamme
> will also request that counsel send a tender letter on
> behalf of [Arrow] to Great American.

7.   This Litigation

     On May 26, 2009, the Plaintiffs filed a complaint against
Great American seeking, among other things, a declaration that

Great American owes Arrow a duty to defend and indemnify for the claims alleged in the Underlying Action.  The summons and complaint were served on Great American on May 29, 2009.

By letter dated June 26, 2009 (the "June 26, 2009 Letter"), Great American denied coverage to Arrow based upon, <u>inter</u> <u>alia</u>, Arrow's failure to provide timely notice of an occurrence or claim to Great American.  The June 29, 2006 Letter stated that under the Great American Policy, "Arrow had a duty to provide notification of any 'occurrence,' or offence that may result in a claim."  The letter further stated:

> Under New York law, an additional insured had an independent duty to provide the notices required under the policy, including notice of an "occurrence" and any "claim" or "suit" arising therefrom, as soon as practicable.  See, <u>23-08-18 Jackson Realty Assoc. v. Nationwide Mutual Ins. Co.</u>, 53 A.D.3d 541 (2d Dep't 2008) and cases cited therein.

The letter explained that Arrow had failed to comply with its duty to provide notice:

> Arrow's notice, in the form of a summons and complaint against [Great American] for the purposes of seeking reimbursement of incurred cost and a demand for indemnification for any settlement or judgment, is untimely and therefore not in compliance with the notice condition contained within the Great American policy.

The June 26, 2009 Letter also denied coverage based on Arrow's failure to immediately send Great American copies of summonses or legal papers arising out of the occurrence.

11

On July 6, 2009, the Plaintiffs filed an amended complaint. The amended complaint alleges that Arrow is an additional insured on the Great American Policy issued to Diamond.  The amended complaint contains three causes of action against Great American for:  (1) a declaration that Great American is required to defend and indemnify Arrow for the Underlying Action, and that such coverage would apply on a primary basis before coverage under the Liberty Policy applies to Arrow; (2) reimbursement of all sums incurred by Liberty to defend Arrow in the Underlying Action; and (3) a declaration that Great American's disclaimer of coverage to Diamond was untimely.  The third cause of action was discontinued by stipulation of the parties on June 24, 2010.

On July 1, 2010, the Plaintiffs filed a motion for partial summary judgment.  On July 2, Great American filed a cross-motion for summary judgment on both of Plaintiffs' remaining claims.  The motions were fully submitted on August 20.

DISCUSSION

1.  Legal Standard for Summary Judgment

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The

moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In making this determination, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or denials" contained in the pleadings.  Fed. R. Civ. P. 56(e); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over material facts -- "facts that might affect the outcome of the suit under the governing law" -- will properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do

more than simply show that there is some metaphysical doubt as
to the material facts").

2.   Arrow Had an Implied Duty to Notify Great American

The parties agree that the Great American Policy must be
interpreted in accordance with New York law.  Under New York
law, "compliance with a policy's notification provisions is a
condition precedent to the insurer's liability under the
policy."  Webster ex rel. Webster v. Mount Vernon Fire Ins. Co.,
368 F.3d 209, 214 (2d Cir. 2004) (citing Power Auth. v.
Westinghouse Elec. Corp., 502 N.Y.S.2d 420, 421-22 (1st Dep't
1986)).  "Because an insured has a contractual obligation under
the policy to provide timely notice of a claim, the insurer does
not become obligated to disclaim coverage until the insured
provides notice."  Webster, 368 F.3d at 214.

Under New York law, even if an insurance policy does not
require that an additional insured provide notice to the insurer
from whom it seeks coverage, an additional insured nonetheless
has an implied duty, independent of the named insured, to
provide the insurer with the notice required under the policy.
23-08-18 Jackson Realty Assocs. v. Nationwide Mut. Ins. Co., 863
N.Y.S.2d 35, 36 (2d Dep't 2008); Structure Tone, Inc. v. Burgess
Steel Prods. Corp., 672 N.Y.S.2d 33, 34 (1st Dep't 1998).  "The
fact that an insurer may have received notice of the claim from

14

the primary insured, or from another source, does not excuse an additional insured's failure to provide notice." 23-08-18 Jackson Realty, 53 A.D.3d at 36-37.  Other courts in this district have acknowledged the implied duty of additional insureds to provide independent notice to insurers under New York law.  See, e.g., City of New York v. Lexington Ins. Co., No. 09 Civ. 1564(PKC), 2010 WL 3466611, at *13 (S.D.N.Y. Aug. 27, 2010); City of New York v. Phila. Indem. Ins. Co., No. 09 Civ. 7253(CM), 2010 WL 3069654, at *7 (S.D.N.Y. July 27, 2010).

The Notice Provision of the Great American Policy states that "You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim" and "[i]f a claim is made or 'suit' is brought against any insured, you must . . . [n]otify us as soon as practicable." Even if the Great American Policy is construed as specifying that only the named insured, i.e., Diamond, was required to provide notice to Great American of an occurrence or claim, Arrow, as an additional insured, had an independent implied duty under New York law to provide notice to Great American as a condition of recovery.

Plaintiffs argue that the Notice Provision in the Great American Policy does not apply to additional insureds.  In support of their argument, Plaintiffs rely principally on Wausau Underwriters Ins. Co. v. QBE Ins. Corp., 496 F. Supp. 2d 357

(S.D.N.Y. 2007), which held that a notice provision nearly identical to the one in the Great American Policy applied only to the named insured, not to additional insureds.  See id. at 361.  That decision pre-dated the Second Department's decision in 23-08-18 Jackson Realty, 863 N.Y.S.2d 35, and also failed to discuss or even cite the First Department's decision in Structure Tone, 672 N.Y.S.2d 33, describing the independent duty of notice imposed on additional insureds under New York law.  As such, Wausau Underwriters is not persuasive and will not be followed.[1]


3.   Arrow Failed to Provide Timely Notice to Great American

Under New York law, "where a contract of primary insurance requires notice 'as soon as practicable' after an occurrence, the absence of timely notice of an occurrence is a failure to comply with a condition precedent which, as a matter of law, vitiates the contract."  Argo Corp. v. Greater N.Y. Mut. Ins. Co., 4 N.Y.3d 332, 339, 827 N.E.2d 762 (2005); see also Tower Ins. Co. of N.Y. v. Miles, 903 N.Y.S.2d 16, 17 (1st Dep't 2010).

---

[1] The Plaintiffs also mistakenly rely on City of New York v. Continental Casualty Co., 805 N.Y.S.2d 391 (1st Dep't 2005).  In Continental Casualty, the insurance company "rested its disclaimer on the failure of the [additional insured] to immediately forward the suit papers as required under the policy."  Id. at 393.  Accordingly, Continental Casualty is inapposite and of no assistance to Plaintiffs.

"If an insured fails to provide timely notice as required by the particular policy, then, absent a valid reason for the delay, the insurer is under no obligation to defend or indemnify the insured." Am. Ins. Co. v. Fairchild Indus., Inc., 56 F.3d 435, 438 (2d Cir. 1995) (citing Allcity Ins. Co. v. Jimenez, 78 N.Y.2d 1054, 1055, 581 N.E.2d 1342 (1991)); see also Hanson v. Turner Constr. Co., 897 N.Y.S.2d 116, 118 (2d Dep't 2010); 1700 Broadway Co. v. Greater N.Y. Mut. Ins. Co., 863 N.Y.S.2d 434, 435 (1st Dep't 2008).  The failure to provide timely notice is a complete defense to coverage, regardless of whether the carrier was prejudiced by the late notice.  See Briggs Ave. L.L.C. v. Ins. Corp. of Hannover, 516 F.3d 42, 49 (2d Cir. 2008) (citing In re Brandon, 97 N.Y.2d 491, 496, 769 N.E.2d 810 (2002)).[2]

The Great American Policy required that notice of an occurrence or claim be given "as soon as practicable," which is "a standard provision in liability policies that has been interpreted to require notice within a reasonable time under the circumstances." Travelers Ins. Co. v. Volmar Constr. Co., Inc., 752 N.Y.S.2d 286, 288 (1st Dep't 2002); see also Olin Corp. v. Ins. Co. of N. Am., 966 F.2d 718, 723 (2d Cir. 1992) (citing

---

[2] New York recently abandoned the no-prejudice rule.  Section 3420 of the New York Insurance Law has been amended to require that an insurer show prejudice before declining coverage for untimely notice.  See N.Y. Ins. Law § 3420(a)(5).  That amendment, however, only applies to policies issued or delivered after January 17, 2009, which is not the case here.

Sec. Mut. Ins. Co. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 441, 293 N.E.2d 76 (1972)). "[W]hile the question of the reasonableness of an excuse for late notice is generally a question of fact for the jury, a delay may be unreasonable as a matter of law when either no excuse is advanced or the proffered excuse is meritless." Green Door Realty Corp. v. TIG Ins. Co., 329 F.3d 282, 287 (2d Cir. 2003) (citation omitted). "The burden is on the insured to show that a delay was reasonable under the circumstances." Fairchild Indus., 56 F.3d at 438 (citation omitted).

Arrow argues that it caused notice of the Garcia Accident and the Underlying Action to be provided to Great American when it sent the January 2, 2008 Letter and copy of Arrow's third-party complaint against Diamond to LFK Partners, which were ultimately forwarded to Great American. The January 2, 2008 Letter, however, was sent almost two years after the Garcia Accident occurred, and almost a year after Arrow was added as a defendant in the underlying action. Even then, the January 2, 2008 Letter did not constitute proper notice of Garcia's claim against Arrow or a request for additional insured coverage under the Great American Policy. The letter did not include a tender of defense and indemnification from Arrow or a copy of a written agreement wherein Diamond agreed to name Arrow as an additional insured under the Great American Policy. Indeed, Arrow did not

18

provide proper notice of Garcia's claim against Arrow or a tender from Arrow until it served the summons and complaint in this action on Great American on May 26, 2009 -- over three years after the Garcia Accident occurred and over two years after Arrow was added as a defendant in the Underlying Action. Unless Arrow's delay in providing Great American proper notice is excused, the delay was unreasonable as a matter of law.

Arrow's delay in providing notice to Great American cannot be excused based on any purported lack of knowledge of the identity of Arrow's insurer. GAB, Arrow's agent, was in possession of the Certificate of Insurance that identified Great American as Diamond's insurer no later than September 2006. In addition, after Great American sent the March 12, 2008 Disclaimer to Diamond -- a copy of which was also sent to Arrow's counsel -- Liberty acknowledged in its internal records the need "to request that [Arrow's] counsel send a tender letter on behalf of [Arrow] to Great American." Plaintiffs have failed to provide any evidence that Arrow's counsel or anyone else ever sent such a tender on behalf of Arrow to Great American. It was not until late May 2009, over fourteen months later, that Arrow provided the notice required under New York law to Great American by serving Great American with the summons and complaint in this action. Because Plaintiffs provide no valid

excuse for this delay, Arrow's failure to provide timely notice to Great American constitutes a complete defense to coverage.

Plaintiffs attempt to avoid the consequences of Arrow's failure to provide timely notice to Great American by arguing that the January 2, 2008 Letter constituted sufficient notice of Arrow's request for additional insured coverage.  Arrow's argument is unavailing.  Arrow's counsel did not send the January 2, 2008 Letter and Arrow's complaint against Diamond directly to Great American.  In fact, the only reason Great American received the January 2, 2008 Letter and the third-party complaint was because they were faxed by LKF Partners to AmWINS, who, in turn, e-mailed them to Great American.  LKF Partners, as Diamond's retail insurance broker, was Diamond's agent, not Great American's.  Further, the January 2, 2008 Letter did not include a tender of defense and indemnification from Arrow or a copy of a written agreement wherein Diamond agreed to name Arrow as an additional insured.  By its terms, the January 2, 2008 Letter merely advised Diamond's insurance broker of Arrow's claim for defense and indemnification against Diamond in an attempt to avoid entry of a default judgment against Diamond. The January 2, 2008 Letter cannot be read as a request by Arrow for additional insured coverage from Great American.

4.   Great American's Disclaimer to Arrow was Proper and Timely

Under New York law, an insurer must "give written notice as soon as is reasonably possible" of its intention to disclaim coverage for bodily injury under a policy.  N.Y. Ins. Law § 3420(d)(2); Hunter Roberts Constr. Grp., LLC v. Arch Ins. Co., 904 N.Y.S.2d 52, 57 (1st Dep't 2010); see also Webster, 368 F.3d at 216.  "'A failure by the insurer to give such notice as soon as is reasonably possible after it first learns of the accident or of grounds for disclaimer of liability or denial of coverage, precludes effective disclaimer or denial.'"  U.S. Underwriters Ins. Co. v. City Club Hotel, LLC, 369 F.3d 102, 107 (2d Cir. 2004) ("City Club") (quoting Hartford Ins. Co. v. Cnty. of Nassau, 46 N.Y.2d 1028, 1029, 389 N.E.2d 1061 (1979)); see also Hunter Roberts Constr., 904 N.Y.S.2d at 57.

Reasonableness of the delay is measured "'from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage.'"  City Club, 369 F.3d at 107 (quoting Allcity Ins., 78 N.Y.2d at 1056, 581 N.E.2d 1342); see also First Fin. Ins. Co. v. Jetco Contracting Corp., 1 N.Y.3d 64, 68-69, 801 N.E.2d 835 (2003).  "Where the grounds for disclaimer are not readily apparent, an insurer must be given reasonable time to adequately investigate a claim in order to determine whether it wishes to disclaim coverage, but the insurer also has an obligation to engage in a reasonably prompt,

thorough, and diligent investigation of the claim." City Club, 369 F.3d at 107 (citation omitted).

New York courts have found that a disclaimer of coverage issued within a month after the insurer obtains sufficient facts to form the basis of the disclaimer is, as a matter of law, reasonable. See, e.g., Lehigh Constr. Grp., Inc. v. Lexington Ins. Co., 894 N.Y.S.2d 299, 301 (4th Dep't 2010) (four weeks); St. Charles Hosp. & Rehab. Ctr. v. Royal Globe Ins. Co., 795 N.Y.S.2d 343, 345 (2d Dep't 2005) (just over one month); DeSantis Bros. v. Allstate Ins. Co., 664 N.Y.S.2d 7, 8 (1st Dep't 1997) (thirty-one days). The Second Circuit, applying New York law, has held that a delay of twenty-two days is reasonable as a matter of law. See Webster, 368 F.3d at 217.

Great American provided its disclaimer to Arrow in the June 26, 2009 Letter, which was issued twenty-eight days after Great American was served with Arrow's complaint in this action on May 29. Great American's disclaimer was reasonably timely as a matter of law.

Plaintiffs argue that Great American's disclaimer was untimely because it was provided seventeen months after Arrow's counsel sent the January 2, 2008 Letter and Arrow's third-party complaint against Diamond to LKF Partners. This argument fails. As discussed above, because the January 2, 2008 Letter did not constitute proper notice of a claim or a tender of defense and

indemnification from Arrow, Great American's duty to disclaim coverage to Arrow within a reasonably timely manner was not triggered.  See Webster, 368 F.3d at 214 ("[A]n insurer's obligation to disclaim coverage as to a particular insured does not arise until that insured has provided notice of the occurrence or claim.").[3]

Plaintiffs next argue that Great American's disclaimer to Arrow was deficient because the June 26, 2009 Letter made no reference to the implied duty under New York law of an additional insured to provide independent notice, but rather relied solely on the language of the Notice Provision in the Great American Policy.  This argument is without factual or legal basis.  The June 26, 2009 Letter stated that Great American had denied coverage because Arrow's request was "untimely."  The letter explained that Arrow had failed to comply with its duty "to provide notification of any 'occurrence,' or offence that may result in a claim."  The

_____

[3] Plaintiffs further argue that because the January 2, 2008 Letter purportedly provided Great American with actual or constructive notice that Arrow was seeking coverage as an additional insured under the Great American Policy, Great American was obligated to include late notice by Arrow as a basis for its March 12, 2008 disclaimer to Diamond.  Plaintiffs contend that because Great American did not do so, it waived any late notice defense with respect to Arrow.  This argument fails. Great American could not have waived a late notice defense as to Arrow because it was under no obligation to raise it at the time.

letter not only quoted from the Notice Provision, but further advised that "[u]nder New York law, an additional insured had an independent duty to provide the notices required under the policy, including notice of an 'occurrence' and any 'claim' or 'suit' arising therefrom, as soon as practicable."  Thus, Arrow's assertion that the June 26, 2009 did not refer to the implied duty of an additional insured to provide notice is simply incorrect.

Moreover, even if the June 26, 2009 Letter had not specifically mentioned the implied duty of an additional insured to provide independent notice, Great American's statement that it had denied coverage on the grounds of untimely notice was sufficient as a matter of law.  See, e.g., Lavandier v. Landmark Ins. Co., 844 N.Y.S.2d 23, 24 (1st Dep't 2007) (notice that insurer was disclaiming "due to late notice" was sufficient); Evangelos Car Wash, Inc. v. Utica First Ins. Co., 845 N.Y.S.2d 458, 459 (2d Dep't 2007) (same).  Great American's disclaimer to Arrow was therefore proper under N.Y. Ins. Law § 3420.

Lastly, Plaintiffs argue that Great American's purportedly untimely disclaimer of coverage to Diamond precluded Great American from denying coverage to Arrow.  Plaintiffs' argument is without merit.  First of all, the June 24, 2010 stipulation withdrew Plaintiffs' third cause of action for a declaration that Great American's disclaimer of coverage to Diamond was

untimely.  Plaintiffs cannot now seek a ruling on the timeliness of Great American's disclaimer to Diamond.  Moreover, Plaintiffs' attack on Great American's disclaimer to Arrow by challenging the validity of Great American's disclaimer to Diamond is misguided.  As discussed above, Arrow had an independent duty under New York law to provide timely notice to Great American.

The Second Circuit's holding in City Club, 369 F.3d 102, relied on by the Plaintiffs, is not to the contrary.  In City Club, the court held that because an insurer failed to notify the defendant, a limited liability company ("LLC"), in a timely manner of the insurer's intention to disclaim coverage, the insurer also failed to notify the members of the LLC in a timely manner.  Id. at 109.  Unlike the members of the defendant LLC in City Club, which the court held were entitled to rely on the LLC's notice of claim to the insurer, id., Arrow could not rely on any notice of occurrence or claim provided on behalf of Diamond to Great American.  Likewise, Arrow could not rely on any purported defects in Great American's disclaimer to Diamond to avoid the consequences of its own failure to provide timely notice to Great American.

In short, Plaintiffs have failed to offer any evidence or provide any valid legal argument to undermine the conclusion

that Great American's disclaimer to Arrow was both proper and timely under N.Y. Ins. Law § 3420.[4]

## CONCLUSION

Plaintiffs' July 1 motion for partial summary judgment is denied. Great American's July 2 motion for summary judgment is granted. The Clerk of Court shall enter judgment for Great American and close the case.

SO ORDERED:

Dated:     New York, New York
           September 17, 2010

DENISE COTE
United States District Judge

---

[4] Because Great American owes no duty to Arrow to defend and indemnify for the claims alleged in the Underlying Action, it is unnecessary to determine the priority of coverage between the Great American Policy and the Liberty Policy.

26